

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

GERALD C. MANN

**ATTORNEY GENERAL**

Honorable Orville S. Carpenter
Chairman and Executive Director
Texas Unemployment Compensation Commission
Austin, Texas

Opinion No. O-2248
Re: Whether or not money paid by an employer under the "Annuities, Insurance and Savings Program" and the "Accident and Sick Benefit Plan" and "Dismissal Wages" constitute "wages" under the Texas Unemployment Compensation Act and the regulations of the Unemployment Compensation Commission in pursuance thereof.

Dear Sir:

We received your letter dated April 17, 1940, which.is self explanatory and reads as follows:

"The definition of 'wages' found in the Texas Unemployment Compensation Act (Article 5221b-17[o]) is the same definition which was found prior to the Act's amendment on April 1, 1939. Under this definition of wages the Commission on July 2, 1937, adopted its Regulation 36, 'Items Included as Wages'. .Regulation 36 was superseded by the present Regulation 38, 'Wages,' which became effective by adoption on September 5, 1939. It is under the statutory provision cited, as well as under the regulations applicable to the periods of time indicated, that your opinion is requested with respect to the fact situations which are to be presented. Does money paid by the corporations which are the employers, under the 'Annuities, Insurance, and Savings Program' and the 'Accident and Sick Benefit Plan' and as 'Dismissal Wages' constitute 'wages' under the Texas Unemployment Compensation Act and regulations in pursuance thereof? This question contemplates money paid into the Funds or Plans as well as money paid to individuals.

"Annuities, Insurance, and Saving Program

"On January 1, 1938, the Ethyl Gasoline Corporation adopted an 'Annuities, Insurance, and Savings Program' for the benefit of all employees of the Company who were in active service on January 1, 1938. Participation in the plan was, and is, voluntary. For the purposes of this program the company established a trust fund, such trust fund being administered by a corporate trustee.

"Under the plan all participating employees contribute by salary deduction authorizations a sum of money not less than three per cent nor more than ten per cent of current salary. To this amount the corporation contributes an equal sum. From these funds each

participant allots a sum not less than two-thirds of the total thereof for annuities. The balance, if any, called 'savings,' remains as a credit in the employee's account in the trust fund.

"A group annuity contract was entered into by the Company with a Life Assurance Society, under which annuities are purchased by the Company with the amounts allotted for such purposes by the employee. Group annuities purchased for a participant belong solely to him. The amount of annuity income payable at retirement depends, or will depend, upon the age at which such allotments are paid to the Assurance Society, the age at retirement, the form of annuity selected, and other pertinent factors.

"Upon termination of employment, an employee receives, or will receive, such paid-up deferred annuity as was, or shall have been, purchased with his own contribution, or he may elect to receive in lieu thereof cash equal to the sum of his own contributions plus interest. With respect to the employing company's contribution, the participant receives, or shall receive, a paid-up deferred annuity which annuity has no cash surrender value.

"To the extent that a participant's credit balance in his savings account permits, it may all be used by him to purchase insurance or it may be withdrawn in cash; provided, however, that the cash withdrawal option may be exercised only after the completion of one year's continuous participation in the plan, and thereafter at intervals of not less than twelve months.

"Accident and Sick Benefit Plan

"Under this voluntarily established plan, the company provides for the payment to eligible employees, absent on account of illness or accident, of benefits equal to their normal salary or wages for periods of weeks ranging from one to thirteen, depending upon the employees' number of years of service. In addition to the benefits paid in accordance with the provisions of the plan, the company, as a matter of general policy, extends further benefits in certain meritorious cases. The company charges benefits paid under the plan to 'Accident and Sick Benefits - supplemental.'

"Thus, two types of benefits are available to the employees: (1) benefits paid in accordance with the plan, and (2) the supplemental benefits paid in accordance with the company's policy. This plan is presented in detail in the attached four-page mimeographed instrument.

"Dismissal Wages

"'Dismissal wages' are amounts of money paid to employees of the company upon the termination of their employment. The company pays a discharged individual, upon his discharge, a sum of money over and above his regular wages, which varies in amount directly with the length of his service record with the company. There is no legal obligation on the part of the company, contractual or otherwise, to pay these dismissal wages."

Section (o) of Article 5221b-17 of the Texas Unemployment Compensation Act, same being Acts 1936, 44th Legislature, 3rd C.S., Page 1993, Ch. 482, defines the word "wages" as follows:

"'Wages' means all remuneration payable for personal services, including commissions and bonuses and cash value of all remuneration payable in any medium other than cash. Gratuities customarily received by an individual in the course of his employment from persons other than his employing unit shall be treated as wages payable by his employing unit. The reasonable cash value of remuneration payable in any medium other than cash, and the reasonable amount of gratuities, shall be estimated and determined in accordance with rules prescribed by the Commission."

Under the above definition of wages the Commission, on July 2, 1937, adopted Regulation No. 36 which reads, in part, as follows:

"(2) Dismissal Wages. Payment to an employee of so-called dismissal wages, vacation allowance, or sick pay, constitutes wages.

"* * *

"(4) Premiums on Life Insurance. Generally premiums paid by an employer on a policy of life insurance covering the life of an employee constitute wages if the employer is not a beneficiary under the policy. However, premiums paid by an employer on policies of group life insurance covering the lives of his employees are not wages, if the employee has no option to take the amount of the premiums instead of accepting the insurance and has no equity in the policy (such as the right of assignment or the right to the surrender value on termination of his employment."

Regulation No. 36 was superseded by Regulation No. 38 on September 5, 1939. Regulation No. 38, contrary to Regulation 36, is silent upon the subject of whether or not accident and sick benefits, dismissal wages, or premiums paid on insurance policies are wages.

Under the Annuities, Insurance and Savings Program we find that upon termination of employment, an employee receives a paid-up deferred annuity which was paid for with the employee's own contribution, or the employee may elect to

receive in lieu thereof cash equal to the sum of the employee's own contribution. With respect to the employer's contribution, the employee receives a paid-up deferred annuity which has no cash surrender value and which is not assignable.

To the extent that an employee's credit balance in his savings account permits, it may all be used by him to purchase insurance or it may be withdrawn in cash; provided, however, that the cash withdrawal does not exceed one-half (1/2) of the amount in his savings account.

As is seen from the above quoted statute, wages includes all remuneration payable for personal services. Even though the employer imposes certain additional conditions to enable the employee to receive the benefits from the employer's contribution to the trust fund, nevertheless, in view of the broad definition of wages as defined by statute, we are of the opinion that the employer's contributions to the trust fund are wages within the meaning of the above quoted statute and such contributions are subject to the unemployment compensation tax.

It seems that the employer, in addition to matching the employee's contribution, may from time to time make additional contributions to the trust fund. We are unable to determine definitely whether this contribution would be wages since we do not know the particulars pertaining to such contributions. If the employee receives additional annuities, insurance, or savings from this additional contribution made by the employer, said contribution would probably be wages. If the contribution is for the purpose of supplying the money to meet the expenses of the actual administration of the trust fund, said contribution would not be wages.

Under the plan in question, we are of the opinion that the earnings of the trust fund, such as interest and profits on investments and dividends received from the insurance companies, are not wages within the meaning of the Act and are not taxable as such.

We find nothing in the Regulations promulgated by the Commission which are contrary to our conclusion above stated.

The Accident and Sick Benefit Plan works as follows:

Employees absent from work because of illness or accident will be allowed their full normal salary or wages for the number of weeks specified below:

| Upon completion of service of | Full salary will be allowed for |
|---|---|
| 1 year | 1 week |
| 2 years | 2 weeks |
| 3 years | 3 weeks |
| 4 years | 4 weeks |
| 5 years | 5 weeks |

| Upon completion of service of | Full salary will be allowed for |
|---|---|
| 6 years | 6 weeks |
| 7 years | 7 weeks |
| 8 years | 9 weeks |
| 9 years | 11 weeks |
| 10 or more years | 13 weeks |

It appears to us that the payments under consideration are made as a result of the personal services rendered to the employer by the individual receiving them. The above benefits are determined and made in accordance with a fixed policy of the employer. An employer would not pay these benefits to one who had not rendered some service to him. We conclude that accident and sick benefits, as described above, are wages within the meaning of Section (o) of Article 5221b-17 and contributions are due thereon.

We find nothing in the Regulations of the Commission which are contrary to the above holding.

Your letter states that the employer extends further accident and sick benefits to the employees in certain meritorious cases. As to these particular benefits, they may or may not be wages according to the particular facts of each case. Should the employer pay an employee an additional sum of money due to the need of the employee and said sum has no relation to the duration of employment or to the salary of the employee, it would seem that such benefits would not be wages for the performance of personal services but would be an outright gift from the employer to the employee

As to these special benefits, if they are not wages within the meaning of Section (o) of Art. 5221b-17, then Regulation No. 36 of the Commission would be inapplicable as to these particular benefits.

Under the facts set out in your letter it seems that it is the custom for the employer to pay every employee certain dismissal wages upon termination of employment. It appears that the amount of dismissal wages paid to a particular employee depends upon his length of employment and the salary or wages that he had received. The employee, no doubt, contemplates receiving these benefits as remuneration for the personal service that he has rendered his employer. Certainly, no employer would pay such money to one who had not rendered some service to him.

We might say that the Texas Law contains no exemption of payments of dismissal wages exempting them from the inclusive definition of wages. We conclude, therefore, that the dismissal wages are wages within the meaning of the Texas Unemployment Compensation Act and contributions are due thereon.

It might be said that Section 3 of Regulation 38, supra, is in conflict with what we have heretofore said in this opinion. Said section reads as follows:

"Ordinarily, facilities or privileges furnished by an employer to individuals in his employ are not deemed to be wages if such facilities or privileges are offered or furnished by the employer merely as a convenience to the employer or as a means of promoting the health, good will, contentment or efficiency of those individuals in his employ."

We do not believe that the above Section has any reference to the particular benefits or wages referred to in this opinion. We quote from a ruling of the Utah Unemployment Compensation Commission as follows:

"Payments not ordinarily considered wages include * * * (3) facilities or privileges, such as entertainment, cafeterias, restaurants, medical services, or so called 'courtesy discounts' on purchases, furnished or offered by an employer merely as a convenience to his workers or as a means of promoting their health, good will or efficiency; * * *"

Other states have adopted a similar regulation as to facilities or privileges furnished by the employer and none seem to have included accident and sick benefits or dismissal wages within the meaning of such regulation. It is not our purpose here to determine what particular "facilities or privileges" are included within Regulation No. 38. We merely hold that said Regulation has no application to the "Accident and Sick Benefit Plan" or to "Dismissal Wages."

We trust that this is the information desired.

Yours very truly

APPROVED JUL 11, 1940

/s/ Grover Sellers

FIRST ASSISTANT
ATTORNEY GENERAL

ATTORNEY GENERAL OF TEXAS

By /s/ Glenn R. Lewis
Glenn R. Lewis
Assistant

By /s/ Lee Shoptaw
Lee Shoptaw

LS:eaw:lm

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE